**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JOHN MEDERICH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. |
| vs. | ) | |
| | ) | Jury Demand |
| CITY OF CHICAGO, OFFICER | ) | |
| NICHOLAS MICHAEL CHRABOT | ) | |
| #12748, and OFFICER DENNIS J. | ) | |
| COCHRAN #16631, SERGEANT ROBERT | ) | |
| SEKERA #1571, SERGEANT | ) | |
| WILLIAM NEJA #1990, and MIKE | ) | |
| LIACOPOULOS, | ) | |
| | ) | |
| Defendants. | ) | |

_____

## COMPLAINT AT LAW

Now comes the Plaintiff, John Mederich ("Plaintiff"), by and through his

attorney, Kent D. Sinson of Sinson Law Group and complaining of the Defendants,

City of Chicago and Officer Nicholas Michael Chrabot #12748, Officer Dennis J.

Cochran #16631, Sergeant Robert Sekera #1571 and Sergeant William Neja #1990,

("Defendants"), alleges as follows:

1.      John Mederich is twenty-one years old.  He is and was a resident of

Chicago, Illinois. He is a communications major at Loyola University in Chicago in

his junior year.  He is currently employed as the wellness coordinator at the Joint

Chiropractic in Chicago.  Between January 2011 and June 2012 Plaintiff was the

Youth Group Explorers secretary for the Defendant Chicago Police Department

where he coordinated charity events for the community.  Prior to this incident

Plaintiff was never arrested. Sadly, the Chicago Police Department while faced with epidemic amounts of violent crime, saw fit to break Plaintiff's arm for drinking a Budweiser in an alley.

2.      The City of Chicago is a Municipal Corporation in Chicago, Illinois. The Chicago Police Department is a division of City of Chicago. The Chicago Police Department is located at 3510 S. Michigan, Chicago, Illinois.

3.      Officer Nicholas Michael Chrabot #12748, Officer Dennis J. Cochran #16631 Sergeant Robert Sekera #1571 and Sergeant William Neja #1990 are and were employees of the City of Chicago Police Department and such its agent for all time relevant to this action. Defendant Chrabot is a self proclaimed "Death dealer." Mike Liacopoulos lives in Long Grove, Illinois.

4.      On March 11th, 2016, the Plaintiff was located in the vicinity of the alley at 1649 W. Division, Chicago, Illinois.

5.      Plaintiff was accompanied by his two friends. The sexual orientation of Plaintiff and his friends is homosexual.

6.      Plaintiff, in the early morning of March 11th, 2016, was standing with his two friends in the alley at or near 1649 West Division. Plaintiff was holding an open 25 ounce Razberrita Bud Light beverage inside a brown paper bag.

7.      Officer Nicholas Michael Chrabot Star #12748 and his partner Officer Dennis J. Cochran Star #16631, while in a marked squad car and in full dress uniform, pulled into the alley that Plaintiff and his friends were in (Beat 1213)(Beat 1424R)(Beat 1414). The police car had a dash cam pointed at Plaintiff and his friends as Officer Chrabot exited the passenger door of the squad car.

8.      Officer Chrabot told Plaintiff "Did you think I wasn't going to see you?" Plaintiff discarded his can of Budweiser Light and walked towards Officer Chrabot. Officer Chrabot pulled his ticket book and began to issue a ticket and started to fill it out. Officer Chrabot asked Plaintiff if Plaintiff knew why the Officer was stopping Plaintiff. Plaintiff admitted to the Officer he was drinking in public and that he knew that was a violation of the law.

9.      The Officer then told Plaintiff that he was going to write up Plaintiff for "not cooperating." Officer Chrabot told Plaintiff was now under arrest and told Plaintiff to put his hands on the officer's squad car. Officer Chrabot pointed to the dash cam on his squad car and told Plaintiff that the camera was recording everything. Plaintiff put his hands on the hood of the squad car as instructed by Officer Chrabot. They then told Officer Chrabot that they bet that if the Plaintiff and his friends were "straight white guys" that the officer would not be treating the Plaintiff the way he was and that "Black lives matter" and that the officer should treat everyone the same.

10.      Officer Chrabot became enraged and told the Plaintiff "What did you say to me?" Officer Chrabot twisted Plaintiff around and threw Plaintiff to the ground fracturing Plaintiff's right arm humerus bone. Plaintiff's right arm was placed in a cast at Norwegian American Hospital prior to being transported to the police station. Five days later, Plaintiff had emergency surgery to repair his broken humerus. Surgery was performed by Dr. Scott Rubenstein of Illinois Bone & Joint at St. Joseph's Hospital.

11.     On March 11th, 2016 at 4:55 A.M. Sergeant Robert Sekera #1571 approved probable cause.  Chicago Police Department Special Order S03-05 for In-car video system states that "District station supervisors will: 3. Whenever operationally feasible, review video of any arrest recorded by the in-car video system as part of the approval of probable cause." [VI D (3)] Final Approval of charges against Plaintiff was by Sergeant Neja #1990 on March 11th, 2016 at 10:48 a.m.

12.     The Defendants in this case committed the crimes of Aggravated Battery [720 ILCS 5/21-4(a), 720 ILCS 5/12-4(b)(8)], Filing a false police report [720 ILCS 5/26-1(a)(4)] and perjury [720 ILCS 5/32-2] against the Plaintiff. Additionally, the Defendants violated the following Police Board City of Chicago Rules and Regulations Article V.  Rules of Conduct: Rule 1: Violation of any law of ordinance, Rule 9: Engaging in any unjustified verbal or physical altercation with any person, while on or off duty, Rule 14: Making a false report, written or oral. Rule 21: Failure to report promptly to the Defendant any information concerning any crime or other unlawful action, Rule 22: Failure to report to the Department any violation of Rules and Regulations or any other improper conduct which is contrary to the policy, orders or directives of the Department.

**COUNT I**
**John Mederich v. City of Chicago and Officer Chrabot #12748**
**42 USC 1983: excessive force**

1-11.   Plaintiff repleads paragraphs 1 through 11 as stated above as paragraphs 1 through 11 herein.

12.     This action against the Defendant's City of Chicago and Chicago police Officer Chrabot #12748 arises under the United States Constitution,

particularly under the Fourth, Fifth, Sixth, and Fourteenth amendments (violations for excessive force) to the constitution of the United States, and under Federal law particularly Title 42, Section 1983 of the United States Code. Plaintiff's substantive Due Process Rights were infringed.

13.     Jurisdiction is conferred on this court by Title 28 Section 1331 and 1343 of the United States Code.

**WHEREFORE**, Plaintiff, John Mederich, asks judgment against the Defendants, City of Chicago and Officer Chrabot #12748 for fair and just compensatory damages for depriving him of the rights, privileges and immunities secured to him by the Constitution of the United States causing him subsequent injuries plus costs and attorneys fees. (42 USC 1988)

## COUNT II
### John Mederich v. City of Chicago and Officer Chrabot #12748
### 42 USC 1981

1-11.     Plaintiff repleads paragraphs 1-11 as part of Count II.

12. This action against the Defendant's City of Chicago and Chicago police Officer Chrabot #12748 arises under the United States Constitution, particularly under the Fourth, Fifth, Sixth, and Fourteenth amendments (violations for excessive force) to the constitution of the United States, and under Federal law particularly Title 42, Section 1981 of the United States Code. Plaintiff's substantive Due Process Rights were infringed.

13.     Jurisdiction is conferred on this court by Title 28 Section 1331 and 1343 of the United States Code.

**WHEREFORE**, Plaintiff, JOHN MEDERICH, asks judgment against the Defendants, City of Chicago and Officer Chrabot for compensatory damages in a fair and just amount sufficient to compensate Plaintiff for depriving him of the rights, privileges and immunities secured to him by the Constitution of the United States causing him subsequent injuries plus costs and attorney's fees. (42 USC 1988)

## COUNT III

**John Mederich v. Officer Chrabot #12748 and City of Chicago
Battery**

1-11.   Plaintiff repleads paragraphs 1-11 as part of Count III.

12.    Defendant Officer Chrabot did use excessive and unnecessary force upon the person of the Plaintiff.  That said act was so cruel and brutal that the conduct shocks the conscience of a civilized society.  Officer Chrabot as an agent of the City of Chicago did unlawfully batter, beat and torture the Plaintiff causing grievous bodily harm.

13.    Without cause or provocation Officer Chrabot spun Plaintiff around and threw him to the ground fracturing Plaintiff's arm.  The conduct of Officer Chrabot was intentional, unjustified, harmful, offensive, willful and malicious. Plaintiff did not consent to the harmful and offensive conduct.

14.    As a result of the physical attack by Officer Chrabot, Plaintiff John Mederich did sustain serious and permanent injuries, that he was injured both internally and externally, that he sustained loss of income, that he incurred medical expenses that he has suffered and will suffer severe pain, suffering and humiliation.  Plaintiff was initially treated in the Norwegian Hospital Emergency Room.  Plaintiff's ability to work

and make a living has been impaired as a result of the injuries he suffered in this brutal and shocking attack.

WHEREFORE, the Plaintiff, John Mederich, demands trial by jury, Judgment in his favor against Defendants City of Chicago and Officer Chrabot and seeks for fair and just compensatory and punitive damages sufficient to compensate Plaintiff, costs and all other appropriate relief.

<u>COUNT IV-MALICIOUS PROSECUTION</u>
**Against All Named Defendants**

11.     Plaintiff adopts paragraph 1-11 as part of Count IV.

12.     Officer Chrabot and Officer Cochran filed a false police report (Chrabot), false criminal complaints (Chrabot), "approved" false criminal charges against Plaintiff (Sekera) and false arrest report (Cochran) maliciously and for improper purpose, including to wrongly accuse Mr. Mederich of criminal conduct to wit battery and resisting arrest (Chrabot, Cochran, Sekera and Neja)  (Exhibit A):

    a)     To harass and intimidate him with criminal charges so that he would  not pursue civil actions against the City of Chicago and their employees Officer Chrabot and Officer Cochran;

    b)     To burden him with the expense of defending himself against criminal charges;

    c)     To intimidate him with the possibility of going to jail for one year on the criminal charges they caused to be brought against him.

    d)     The fact that if Officers Chrabot and Officer Cochran's claim that Plaintiff grabbed Officer Chrabot "by the left wrist" was in fact true, which Plaintiff denies, then Officer Chrabot and Officer Cochran should have sought felony aggravated battery charges against the Plaintiff under 720 ILCS 5/12-4(b)(18).  Under 720 ILCS 5/12-4(e)(2) that crime of aggravated battery is a Class 2 felony.  The inventory slip in the criminal case lists the "charge type" against Mr. Mederich as "Felony".  Officer Chrabot and Officer Cochran did not contact the Cook County State Attorney's felony review unit seeking felony charges against the Plaintiff because these officers knew that after the responding Assistant State's Attorney interviewed Mr. Mederich that they would conclude that criminal charges should not be brought against Mr. Mederich and instead Officer Chrabot and Officer

Cochran should be charged with felony offences. These officers also knew that the responding Assistant States Attorney would insist on viewing the dash cam video and these Officers knew that the dash cam video revealed these Officers committed several felonies. Instead Officer Chrabot and Officer Cochran charged Plaintiff with misdemeanors which did not involve or require the involvement or approval of the Cook County State's Attorneys office. Charges were approved by Chicago Police Sergeant Robert A. Sekera #1571 and Sergeant William Neja #1990 which conspired with Officer Chrabot and Officer Cochran by not viewing and inventorying the dash can video and audio and by instead charging Plaintiff with the crimes of battery and resisting arrest which he did not commit.

e) Sergeant Sekera and Sergeant Neja failed to assign a detective to the case despite knowing that based upon the allegation of Officer Chrabot and Officer Cochran the Plaintiff had committed a violent felony offence and Chicago Police procedure required a detective to be assigned. Sergeant Sekera and Sergeant Neja did not want a detective assigned because a detective should have insisted on preservation of the video and audio evidence and should have insisted on contacting the Cook County State Attorney's Office to interview all parties including the Plaintiff. Instead as part of the Chicago Police Department Code of Silence, they wanted to stifle an investigation or oversight.

13. As a result of the criminal complaint, Mr. Mederich was held in public disdain and ridicule and his personal life was a matter of public record.

14. Despite the obvious baselessness of their complaint, the City of Chicago and their employees Officer Chrabot, Officer Cochran, Sergeant Robert A. Sekera #1571 and Sergeant William Neja #1990 insisted upon Mr. Mederich's prosecution maliciously and for improper purposes including:

a) To harass and intimidate him with criminal charges so that he would not pursue civil actions against the City of Chicago and Officer Chrabot and Officer Cochran;

b) To burden him with the expense of defending himself against criminal charges.

c) To intimidate him with the possibility of going to jail for one year on the criminal charges they caused to be brought against him.

d) The fact that if Officers Chrabot and Officer Cochran's claim that Plaintiff grabbed Officer Chrabot "by the left wrist" was in fact true, which Plaintiff denies, then Officer Chrabot and Officer Cochran should have sought felony aggravated battery charges

against the Plaintiff under 720 ILCS 5/12-4(b)(18). Under 720 ILCS 5/12-4(e)(2) that crime of aggravated battery is a Class 2 felony. The inventory slip in the criminal case lists the "charge type" against Mr. Mederich as "Felony". Officer Chrabot and Officer Cochran did not contact the Cook County State Attorney's felony review unit seeking felony charges against the Plaintiff because these officers knew that after the responding Assistant State's Attorney interviewed Mr. Mederich that they would conclude that criminal charges should not be brought against Mr. Mederich and instead Officer Chrabot and Officer Cochran should be charged with felony offences. These officers also knew that the responding Assistant States Attorney would insist on viewing the dash cam video and these Officers knew that the crash cam video revealed these Officers committed several felonies. Instead Officer Chrabot and Officer Cochran charged Plaintiff with misdemeanors which did not involve or require the involvement or approval of the Cook County State's Attorneys office. Charges were approved by Chicago Police Sergeant Robert A. Sekera #1571 and Sergeant William Neja #1990 which conspired with Officer Chrabot and Officer Cochran by not viewing and inventorying the dash can video and audio and by instead charged Plaintiff with the crimes of battery and resisting arrest which he did not commit.

e)    Sergeant Sekera and Sergeant Neja failed to assign a detective to the case despite knowing that based upon the allegation of Officer Chrabot and Officer Cochran the Plaintiff had committed a violent felony offence and Chicago Police procedure required a detective to be assigned. Sergeant Sekera and Sergeant Neja did not want a detective assigned because a detective should have insisted on preservation of the video and audio evidence and should have insisted on contacting the Cook County State Attorney's Office to interview all parties including the Plaintiff. Instead as part of the Chicago Police Department Code of Silence, they wanted to stifle an investigation or oversight.

15.    As a result of this wrongful prosecution, Mr. Mederich was required to retain an attorney and prepare for trial. Mr. Mederich was charged significant sums by these attorneys.

16.    On April 20, 2016, Officer Chrabot, Officer Cochran, Sergeant Robert Sekera #1571 and Sergeant William Neja #1990 failed to appear before Judge William B. Raines in Branch 23 and all charges against John Mederich were dismissed.

17. The conduct of the City of Chicago and Officer Chrabot, Officer Cochran, Sergeant Robert Sekera #1571 and Sergeant William Neja #1990 was malicious and willful.

18. As a direct and proximate result of Defendant's conduct, Mr. Mederich sustained personal injuries, has suffered and will suffer severe pain, suffering and suffered damages to be proven before a jury at trial.

WHEREFORE, Plaintiff John Mederich demands trial by jury, judgment in his favor and against Defendant's City of Chicago, Officer Chrabot, Officer Cochran, Sergeant Robert Sekera #1571 and Sergeant William Neja #1990 and seeks fair and just compensatory damages, punitive damages, costs and all other appropriate relief.

## COUNT V
### John Mederich v. City of Chicago: Monell claims
### 42 USC §1983

11. Plaintiff adopts paragraph 1-11 as part of Count V.

12. On March 11th, 2016 Defendant Officer Chrabot subjected John Mederich to excessive force.

13. The misconduct as described in the preceding paragraphs was objectively unreasonable and was undertaken intentionally, maliciously, willfully and with reckless indifference to John Mederich's constitutional rights.

14. The misconduct described in this Count was undertaken pursuant to the policy and practice of the Chicago Police Department in that:

      a. As a matter of both policy and practice, the Chicago Police Department directly encourages the type of misconduct at issue here by failing to adequately train, supervise and control its officers, and its failure to do so constitutes deliberate indifference;

      b. As a matter of both policy and practice, the Chicago Police Department facilitates the type of misconduct at issue here by failing to adequately punish and discipline prior instances of similar

misconduct, thereby leading Chicago Police Officers to believe their actions will never be scrutinized and, in that way, directly encourages future abuses such as those affecting John Mederich; specifically Chicago Police officers accused of misconduct are aware the Independent Police Review Authority will not full investigate these accusations and will almost always refuse to recommend discipline even where the officer has engaged in wrongdoing;

c.    As a matter of widespread practice so prevalent as to comprise municipal policy, Officers of the Chicago Police Department abuse citizens in a manner similar to that alleged by Plaintiff in this Count on a frequent basis, yet the Chicago Police Department makes findings of wrongdoing in a disproportionately small number of cases;

d.    Municipal policy-makers are aware of, and condone and facilitate by their inaction, a "code of silence" in the Chicago Police Department, by which Officers fail to report misconduct at issue in this case.  This code is an implicit understanding between and among members of the CPD resulting in a refusal or failure to report instances of misconduct of which they are aware, including the use of unlawful force, despite their obligation to do so as sworn peace officers.  This includes police officers who remain silent or give false or misleading information during official investigations into allegations of a fellow officer related to misconduct that occurred on duty or off duty in order to protect themselves or their fellow officers from discipline, criminal prosecution or civil liability. This also includes police officers that intentionally destroy video dash cam evidence and police communications audio, which demonstrates that their police reports are false and that certain officers have committed crimes.  Part of this code of silence is the Sergeants instructing the officers to destroy video and audio evidence of misconduct committed by the officers or by looking the other way when officers destroy video or audio evidence of the officers misconduct or by failing in their duty to instruct the officers to preserve any inventory in evidence all relevant video and audio evidence.  Sergeants also instruct officers not to seek felony charges for alleged felonies when Sergeant knows that his officer engaged in misconduct and the Sergeant is trying to protect the Chicago Police Department from scrutiny from the Cook County State's Attorney's office.  A recent City of Chicago mayoral task force report found that officer's willingness to turn a blind eye to wrongdoing by fellow officers is "an unfortunate element of police culture, past and present."  In his speech to the Chicago City Council in December, 2015, Mayor Rahm Emanuel said "this problem is sometimes referred to as the thin blue line.  Other times it is referred to as the code of silence.  It is the tendency to ignore, deny or in some cases cover up the bad actions of a colleague or colleagues."  In court on

11

the case of *Spalding and Echeverria vs. City of Chicago* on May 20, 2016, the City of Chicago admitted to District Judge Gary Feinerman that the Chicago Police Department observe a "code of silence" where Chicago police officers turn a blind eye to abuses by their fellow officers.

e.  The City of Chicago has failed to act to remedy the patterns of abuse described in the preceding sub-paragraphs, despite actual knowledge of the same, thereby causing the types of injuries alleged here;

f.  As a matter of express policy, the City of Chicago does not retain any records which are more than five years old documenting allegations of misconduct against police officers, thereby preventing the City from ascertaining any patterns of abuse which might develop over the course of a Police Officer's career;

g.  As a matter of express policy, the City of Chicago refuses to take into consideration patterns of allegations of civil rights violations when evaluating the merits of any particular complaint. Regardless, the number of times an Officer is accused of the same misconduct, the Independent Police Review Authority is forbidden by the City from considering those allegations if they are deemed "unsustained"; and,

h.  The problem with the policy identified in the preceding paragraph is that by its own accounting, the City sustains less than 5% of the complaints brought against Police Officers for violations of civil rights.

15.  As a result of the unjustified and excessive use of force John Mederich suffered severe injuries, as well as severe conscious pain and suffering, and emotional distress.

WHEREFORE, Plaintiff prays for judgment against the City of Chicago for compensatory damages in a fair and just amount sufficient to compensate John Mederich for the injuries he suffered, plus, Plaintiff seeks a substantial sum in punitive damages, costs and reasonable attorney fees (42 USC 1988), and all such other relief as this Court finds just and equitable.

**COUNT VI**
**42 USC §1985(2)**
**CONSPIRACY**

**John Mederich vs. Officer Chrabot, Officer Cochran,**
**Sergeant Sekera, Sergeant Neja and Mike Liacopoulos**

11.     Plaintiff realleges and incorporates herein by reference the foregoing allegations contained in paragraphs 1 through 11, above, as if fully set forth herein.

12.     The individual Defendants, acting together, reached an understanding and agreement, engaged in a course of conduct, and otherwise conspired among and between themselves and with other unnamed and/or as yet unknown co-conspirators, to intimidate, threaten and otherwise deter the Plaintiff by bringing false criminal charges of battery and resisting arrest against Plaintiff and by destroying the video and audio evidence that documented Officer Chrabot committing criminal acts on Plaintiff thereby deterring Plaintiff from acting as party to any potential and/or threatened action in the federal courts of the United States related to the conduct described herein and above.

13.     Jay Darshane is district manager for a number of Chicago-area Burger King restaurants, including one in the vicinity of where Chicago Police Officer Van Dyke killed Laquan McDonald.  That location is equipped with surveillance cameras. On the night of the shooting, several officers came to the restaurant and asked to view the recordings.  Employees gave them the password and three hours later the officers left.  When Independent Police Review Authority showed up the next day looking for the video, they found that the relevant video had been deleted.  Darshane says the police are to blame for the deleted files.  He said "We had no idea they were going to sit there and delete files."  "We were just trying to help the police officers."  Similarly, in this case the owner of the retail establishment  M.L. Restaurant & Lounge, Inc. d/b/a Rite Liquors which had video cameras just feet from the incident described in the complaint

either destroyed or allowed the police to destroy the video from the surveillance cameras. Also, management of the retail establishment Chicago Athletic Clubs at 1635 W. Division, either destroyed or failed to save video footage of the incident described in the complaint. Specifically, the owner of Rite Liquors, Mike Liaqcopoulos conspired with the Chicago Police Department to destroy or allow to be destroyed evidence that the Chicago Police Department had committed the various felonies described in this complaint, conspired to deprive Plaintiff the evidence of his innocence to criminal charges, and conspired to defeat the Defendant's civil liability for their actions.

14.     The fact that if Officers Chrabot and Officers Cochran's claim that Plaintiff grabbed Officer Chrabot "by the left wrist" was in fact true, which Plaintiff denies, then Officer Chrabot and Officer Cochran should have sought felony aggravated battery charges against the Plaintiff under 720 ILCS 5/12-4(b)(18). Under 720 ILCS 5/12-4(e)(2) that crime of aggravated battery is a Class 2 felony. The inventory slip in the criminal case lists the "charge type" against Mr. Mederich as "Felony". Officer Chrabot and Officer Cochran did not contact the Cook County State Attorney's felony review unit seeking felony charges against the Plaintiff because these officers knew that after the responding Assistant State's Attorney interviewed Mr. Mederich that they would conclude that criminal charges should not be brought against Mr. Mederich and instead Officer Chrabot and Officer Cochran should be charged with felony offenses. These officers also knew that the responding Assistant State's Attorney would insist on viewing the dash cam video and these Officers knew that the dash cam video revealed these Officers committed several felonies. Instead Officer Chrabot and Officer Cochran charged Plaintiff with misdemeanors which did not involve or require the involvement of approval of the Cook County State's Attorney's office. Charges were approved by Chicago Police Sergeant Robert A. Sekera #1571 and Sergeant William Neja #1990

which conspired with Officer Chrabot and Officer Cochran by not viewing or inventorying the dash cam video and audio and by instead charging Plaintiff with crimes of battery and resisting arrest which he did not commit.

15. Sergeant Sekera and Sergeant Neja failed to assign a detective to the case despite knowing that based upon the allegation of Officer Chrabot and Officer Cochran the Plaintiff had committed a violent felony offence and Chicago Police procedure required a detective to be assigned. Sergeant Sekera and Sergeant Neja did not want a detective assigned because a detective should have insisted on preservation of the video and audio evidence and should have insisted on contacting the Cook County State Attorney's office to interview all parties including Plaintiff. Instead as part of the Chicago Police Department Code of Silence, they conspired to stifle an investigation or oversight.

16. Defendants are aware of, conspire, and condone and facilitate by their inaction, a "code of silence" in the Chicago Police Department, by which Officers fail to report misconduct at issue in this case. This code is an implicit understanding between and among members of the CPD resulting in a refusal or failure to report instances of misconduct of which they are aware, including the use of unlawful force, despite their obligation to do so as sworn peace officers. This includes police officers who remain silent or give false or misleading information during official investigations into allegations of a fellow officer related to misconduct that occurred on duty or off duty in order to protect themselves or their fellow officers from discipline, criminal prosecution or civil liability. This also includes police officers that intentionally destroy video dash cam evidence and police communications audio, which demonstrates that their police reports are false and that certain officers have committed crimes. Part of this code of silence is in the Sergeants instructing the officers to destroy video or audio evidence of

the officers' misconduct or by failing in their duty to instruct the officers to preserve any inventory in evidence all relevant video and audio evidence. Sergeants also instruct officers not to seek felony charges for alleged felonies when the Sergeant knows that his officer engages in misconduct and the Sergeant is trying to protect the Chicago Police Department from scrutiny from the Cook County State's Attorney's office. A recent City of Chicago mayoral task force report found that officers' willingness to turn a blind eye to wrongdoing by fellow officers is "an unfortunate element of police culture, past and present." In his speech to the Chicago City Council in December, 2015, Mayor Rahm Emanuel said "this problem is sometimes referred to as the thin blue. Other times it is referred to as the code of silence. It is the tendency to ignore, deny or in some cases cover up the bad actions of a colleague or colleagues." In court on the case of *Spalding and Echeverria vs. City of Chicago* on May 20, 2016, the City of Chicago admitted to District Court Judge Gary Feinerman that the Chicago Police Department observe a "code of silence" where Chicago police officers turn a blind eye to abuses by their fellow officers.

17.     As the proximate result of the threats and intimidation described herein and above, the Plaintiff has suffered and will in the future continue to suffer injuries as a personal and pecuniary nature.

WHEREFORE, the Plaintiff, John Mederich demands judgment against the Defendants Officer Nicholas Michael Chrabot, Officer Dennis J. Cochran, Sergeant Robert Sekera #1571, Sergeant William Neja #1990 and Mike Liacopoulos jointly and severally including compensatory damages, punitive damages, plus costs, attorneys' fees, and any other relief the Court deems just and appropriate.

## COUNT VII
## INDEMNIFICATION

### John Mederich vs. City of Chicago

11.     Plaintiff realleges and incorporates herein by reference the foregoing allegations contained in paragraphs 1 through 11, above, as if fully set forth herein.

12.     Defendants Officer Nicholas Michael Chrabot, Officer Dennis J. Cochran, Sergeant Robert Sekera #1571 and Sergeant William Neja #1990 were employees and agents of the CITY and acted within the scope of their employment in committing the misconduct described herein and the Defendant, CITY, was their principal.

13.     Defendant, CITY, is a municipal corporation required to provide indemnity within the meaning of 735 ILCS 10/9-102 for all actual damages caused by the Defendants, Officer Nicholas Michael Chrabot, Officer Dennis J. Cochran, Sergeant Robert Sekera #1571 and Sergeant William Neja #1990 caused while acting in the scope of their employment.

WHEREFORE, the Defendant, CITY OF CHICAGO, is liable for Plaintiff, John Mederich, for an amount which will compensate them for past and future damages, including but not limited to Plaintiff's pain, suffering, emotional distress, proximately caused by the wrongful and unlawful acts of the Defendants, Officer Nicholas Michael Chrabot, Officer Dennis J. Cochran, Sergeant Robert Sekera #1571 and Sergeant William Neja #1990.

## COUNT VIII
## NEGLIGENCE/SPOILATION

### John Mederich vs. Officer Chrabot, Officer Cochran,
### Sergeant Robert Sekera #1571 and Sergeant William Neja #1990 and the City of Chicago

1.   On March 11, 2016 Plaintiff was charged by City of Chicago agent Officer Chrabot, #12748, with the crimes of Battery (720 ILCS 5/12-3-A-2) and Resisting Arrest (720 ILCS 5/31-1-A) Officer Chrabot attested under oath as to each charge "The complainant, being first duly sworn on oath, deposes and says that s/he read the foregoing complaint by him/her subscribed and that the same is true."  Sergeant Sekera and Sergeant Neja "approved" these false charges against Mr. Mederich.

2.   The City of Chicago through their agents, Officer Chrabot, Officer Cochran, Sergeant Robert Sekera #1571 and Sergeant William Neja #1990, were aware of the seriousness of the charges they brought against the Plaintiff, which included the possible penalty of one year in prison on each charge.

3.   At the time of the incident, the City of Chicago, through their agents, Officer Chrabot and Officer Cochran were operating a dash cam video and audio in their squad car. The City of Chicago and the officers knew, or should have known, that the video and audio tapes were material evidence relating to the pending criminal case and the potential civil case. The defendants knew the tapes would have resolved whether the Plaintiff had committed Battery or Resisting Arrest, would resolve if Officer Chrabot lied in his police report and in his signed complaints, would have resolved if Office Cochran lied in his arrest report, and would have resolved if Officer Chrabot used excessive force.  As part of Officer Chrabot's, Officer Cochran's, Sergeant Robert Sekera #1571 and Sergeant William Neja #1990  police training, they were taught to

inventory evidence in the case and send it to the evidence room. The Officers failed to

inventory the video and audio of the incident and place it in the evidence room.

    4.   In 720 ILCS 5/14-3(h) it states as follows:

> (h)    Recordings made simultaneously with the use of an in-car video camera recording of an oral conversation between a uniformed peace officer, who has identified his or her office, and a person in the presence of the peace officer whenever (i) an officer assigned a patrol vehicle is conducting an enforcement stop; or (ii) patrol vehicle emergency lights are activated or would otherwise be activated if not for the need to conceal the presence of law enforcement;

> For the purposes of this subsection (h), "enforcement stop" means an action by a law enforcement officer in relation to enforcement and investigation duties, including but not limited to, traffic stops, pedestrian stops, abandoned vehicle contacts, motorist assists, commercial motor vehicle stops, roadside safety checks, requests for identification, or responses to requests for emergency assistance;

> (h-5)   Recordings of utterances made by a person while in the presence of a uniformed peace officer and while an occupant of a police vehicle including, but not limited to, (i) recordings made simultaneously and the use of an in-car video camera and (ii) recordings made in the presence of a peace officer utilizing video or audio systems, or both, authorized by the law enforcement agency;

> (h-10)  Recordings made simultaneously with a video camera recording during the use of a taser or similar weapon or device by a peace officer if the weapon or device is equipped with such camera;

> (h-15)  Recordings made under subsection (h), (h-5), or (h-10) shall be retained by the law enforcement agency that employs the peace officer who made the recordings for a <u>storage period of 90 days</u>, unless the recordings are made as a part of an arrest or the recordings are deemed evidence in any criminal, civil, or administrative proceeding and then the recordings must only be destroyed upon a final disposition and an order from the court. UNDER NO CIRCUMSTANCES SHALL ANY RECORDING BE ALTERED OR ERASED PRIOR TO THE EXPIRATION OF THE DESIGNATED STORAGE PERIOD. Upon completion of the storage period, the recording medium may be erased and reissued for operational use.

    5.    The Subpoena Request Guidelines for the Chicago Police Department is

as follows: "In car video (90 day retention period)" (Exhibit B).

6.      Chicago Police Department Special Order S03-05, II 6 states:  "All digitally recorded data created by the in-car video systems will be retained by the Records Division for a minimum of 90 days." (Exhibit C)  VI E states "Recorded misdemeanor arrests….will be automatically stored by the in-car video system indefinitely when the correct event is selected from the post event pop up menu."  IX E (Exhibit  C )  The Director, Records Division will, 1. Maintain the cataloging system for storage and retrieval of recordings and procedures for ensuring archives are maintained consistent with Department directives (including the Forms Retention Schedule), applicable <u>State</u> and Federal <u>laws</u> and <u>compliance with all court orders."</u>  (Exhibit C)

7.      Illinois State Law 11.6 was approved by the Cook County Local Records Commission on June 14th, 2005.  It read as follows:

11.6     <u>VIDEO SURVEILLANCE RECORDS</u>

Dates:                                  2005 –
Volume:                              Negligible
Annual Accumulation:        Negligible
Arrangement:                      Chronological

Types of possible criminal activity transmitted by cameras to
Chicago Police Department Squad cars equipped with recording
Equipment.

Recommendation:        If a tape contains potentially probative
                                        Evidence in criminal or civil litigation,
                                        Retain for thirty days after a final judgment
                                        Has been entered and all appeals have been
                                        Exhausted in that case.  If the tapes contains
                                        No potential probative evidence, they may be
                                        Discarded or reused after three (3) days.
                                        (Exhibit D)

8.      Final judgment was entered in the criminal case on April 20th, 2016. According to David Joens, the Director of the Illinois State Archives, the actual time periods described in the applications are binding on the local agencies." (Exhibit  E). "No record may be disposed of before the assigned retention period has elapsed and

written approval of the commission obtained.  [Title 44, Subtitle C, Chapter V, Part 4500, 30(e)]" (Exhibit E)

9.     Plaintiff served a subpoena duces tecum on the Chicago Police Department for the subject video and audio on April 13, 2016. (Exhibit F). Preservation letter was served on the Chicago Police Department on May 10th, 2016 (Exhibit G) and the head of the City of Chicago Department of Law, Steven Patton on May 11th, 2016, (Exhibit H ).

10.     In correspondence dated April 22, 2016 and disclosed to Plaintiff on May 2, 2016, the City of Chicago indicates as to the requested video and audio "not found". (Exhibit I).

11.     Based on the serious and substantial injuries to the Plaintiff, the City of Chicago and their agents Officer Chrabot, Officer Cochran, Sergeant Robert Sekera #1571 and Sergeant William Neja #1990  were certainly aware of a potential civil lawsuit. Criminal charges were brought against the Plaintiff to intimidate him and for the express purpose of dissuading him from pursuing his civil remedies.

12.     The City of Chicago and their agents Officer Chrabot, Officer Cochran, Sergeant Robert Sekera #1571 and Sergeant William Neja #1990, owed Plaintiff a duty of care to preserve the video and audio tapes of the actions occurring at the location of the alleged crime. This duty was based upon the following:

      a.     The City of Chicago and their agents Officer Chrabot, Officer Cochran, Sergeant Robert Sekera #1571 and Sergeant William Neja #1990  were immediately aware that there was a court action based on activities that allegedly occurred during their appeal of the Plaintiff. The City of Chicago directed Officer Chrabot and Officer Cochran to fill out police reports, arrest reports, and criminal complaints immediately after the occurrence.

b.　　　The City of Chicago and their agents Officer Chrabot, Officer
Cochran, Sergeant Robert Sekera #1571 and Sergeant William Neja #1990
destroyed the video and audio tapes without giving any of the Plaintiff's lawyers
an opportunity to conduct its own investigation of the tapes. The City of Chicago
and their agents Officer Chrabot, Officer Cochran, Sergeant Robert Sekera
#1571 and Sergeant William Neja #1990 had a duty to preserve the evidence so
that Plaintiff could have his experts examine the evidence.

c.　　　City of Chicago owed citizens of Chicago a duty to protect
Plaintiff from wrongful acts by Officer Chrabot, Officer Cochran, Sergeant
Robert Sekera #1571 and Sergeant William Neja #1990 and to preserve evidence
which memorialized the conduct of their agents.

d.　　　City of Chicago had a duty to their agents, Officer Chrabot,
Officer Cochran, Sergeant Robert Sekera #1571 and Sergeant William Neja
#1990 to preserve evidence on behalf of their agents in anticipation of future
litigation.

13.　　The City of Chicago and their agents Officer Chrabot, Officer Cochran,
Sergeant Robert Sekera #1571 and Sergeant William Neja #1990 breached their duty
when they carelessly, negligently or intentionally by way of acts or omissions destroyed
the video and audio tapes of the activities occurring.

14.　　As a proximate result of the City of Chicago and their agents, Officer
Chrabot's, Officer Cochran's, Sergeant Robert Sekera #1571 and Sergeant William Neja
#1990, negligent spoliation of evidence , Plaintiff has been harmed in his attempt to
prove his underlying cause of action in the following ways:

e.　　　The tapes would have proved Plaintiff did not commit the crimes
of battery or resisting arrest.

f.      The tapes would have proved that City of Chicago agents made false statements about the Plaintiff.

g.      Destruction of the tapes prevented Plaintiff from hiring an expert to examine the tapes for relevant information.

15.     Internal Chicago Police Department and City of Chicago Office of Emergency Management and Communications policy and procedure further required the preservation of evidence in this case.

16.     In light of the circumstances, it was the duty of Defendant City of Chicago, individually, and through its agents, including counsel, to exercise ordinary care and caution to preserve the integrity of evidence material to this potential and actual civil action arising from the subject occurrence.

17.     The City is responsible under Respondeat Superior for the conduct of its agents.

18.     As a result of one or more of the negligent acts or omissions, or intentional acts or omissions, of Defendant City of Chicago, through its employees and agents, known and unknown, plaintiff has been injured in that his ability to prosecute and enforce his legal rights the City of Chicago Defendants and has been irrevocably prejudiced by the destruction and or modification of the aforestated material evidence as above described.

18.     As a direct and proximate result of said destruction and or modification plaintiff is severely prejudiced in his ability to prove the underlying suit against the City of Chicago defendants.

WHEREFORE, Plaintiff demands judgment against City of Chicago, and Officer Chrabot, Officer Cochran, Sergeant Robert Sekera #1571 and Sergeant William Neja

23

#1990  for compensatory damages plus the costs of this action including but not limited to attorneys' fees and such other relief as to the Court deems just and equitable.

**COUNT IX**
**BREACH OF DUTY TO TRAIN AND SUPERVISE**
(against Defendant City of Chicago and Sergeant Robert Sekera #1571 and
Sergeant William Neja #1990)

1-11.    Counts 1 through 11 of this complaint are incorporated herein.

12.    In committing the acts alleged in the preceding paragraphs, Chicago Police Department Officer Chrabot, Officer Cochran, Sergeant Robert Sekera #1571 and Sergeant William Neja #1990 were members of the Chicago Police Department, and agents of Defendant City of Chicago, acting at all relevant times within the scope of their employment.

13.    The Chicago Police Department at all times relevant had a duty to properly train, supervise, and discipline Chicago Police Department Officers in relation to Officers Chrabot's attack on Plaintiff and in relation to the preservation of the video and audio tape.

14.    The Chicago Police Department breached that duty by failing to properly train, supervise, and discipline the agents involved in the instant complained concerning the attack on Plaintiff by Officer Chrabot and the failure of Officer Chrabot, Officer Cochran, Sergeant Robert Sekera #1571 and Sergeant William Neja #1990,  to preserve the video and audio tape evidence of this incident.  Sergeant Robert Sekera #1571 and Sergeant William Neja #1990 had a duty to train Officer Chrabot and Officer Cochran to preserve the evidence.

15.    As a direct and proximate result of one or more of the aforesaid failure to train and supervise the Chicago Police officers involved, Plaintiff suffered serious injury including a fractured arm.

24

WHEREFORE, plaintiff prays for judgment against Defendant City of Chicago, Sergeant Sekera and Sergeant Neja in excess of the jurisdictional limits of this Court costs with interest in bringing this action, and for such other relief for plaintiff as the court deems fair and just.

### COUNT X
### RESPONDEAT SUPERIOR
(against Defendant City of Chicago only)

1-11.    Counts 1 through 11 of this complaint are incorporated herein.

12.    In committing the acts alleged in the preceding paragraphs, Chicago Police Department Officer Chrabot, Officer Cochran, Sergeant Robert Sekera #1571 and Sergeant William Neja #1990 were members of the Chicago Police Department, and agents of Defendant City of Chicago, acting at all relevant times within the scope of their employment.

13.    Defendant City of Chicago is liable as principal for all torts committed by its agents.

WHEREFORE, plaintiff prays for judgment against Defendant City of Chicago in excess of the jurisdictional limits of this court costs with interest in bringing this action, and for such other relief for plaintiff as the court deems just and fair.

Respectfully Submitted,

SINSON LAW GROUP

/s/ Kent D. Sinson
Kent D. Sinson for Plaintiff

Kent D. Sinson
Sinson Law Group
20 North Wacker Drive, Suite 1010
Chicago, Illinois 60606
(312) 332-2107
ARDC #6196953