UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOHN MEDERICH, <br><br>      Plaintiff, <br><br>    v. <br><br>CITY OF CHICAGO, OFFICER NICHOLAS M. CHRABOT #12748, OFFICER DENNIS J. COCHRAN #16631, SERGEANT JOSEPH W. GIAMRBONE #2500, DETECTIVE JOY VAN BEVEREN #21219, OFFICER ERIC GOMEZ, OFFICER EDWARD GOMEZ, COBAN TECHNOLOGIES, INC., and MIKE LIACOPOULOS, <br><br>      Defendants. | No. 16 CV 5481 <br><br> Judge Manish S. Shah |

**MEMORANDUM OPINION AND ORDER**

While arresting plaintiff John Mederich, defendant Officer Michael Chrabot broke Mederich's arm. Dash cameras in the police squad cars and surveillance cameras from nearby businesses should have recorded the interaction between Mederich and the police officers, but no video or audio footage exists. Mederich brings a variety of claims against the City of Chicago; individual police officers; Coban Technologies, a company that services the police department's dash cameras; and Mike Liacopoulos, the owner of a liquor store that may have had surveillance video of the arrest. Defendants move to dismiss all claims, except the excessive force claim (Count I) and the *Monell* claim (Count IV).

**I.      Legal Standards**

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain factual allegations that plausibly suggest a right to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). In ruling on a motion to dismiss under 12(b)(6), a court must accept all factual allegations as true and draw all reasonable inferences in the plaintiff's favor, but the court need not accept legal conclusions or conclusory allegations. *Id*. at 680–82.

**II.     Background**

John Mederich and two of his friends were standing in an alley when a marked squad car with Officers Nicholas Chrabot and Dennis Cochran, in full dress uniform, arrived. [36] at 3 ¶¶ 6–7.[1] Mederich was holding a brown paper bag that contained an open twenty-five ounce alcoholic beverage. *Id*. at 3 ¶ 6. The squad car's dash camera pointed at Mederich and his friends. *Id*. at 3 ¶ 7. Chrabot exited the squad car and said to Mederich, "Did you think I wasn't going to see you?" *Id*. at 3 ¶¶ 7–8. While writing Mederich a ticket, Chrabot asked Mederich if he knew why he was being stopped. *Id*. at 3 ¶ 8. Mederich answered that he was stopped because he was drinking in public, in violation of the law. *Id*. Chrabot threatened to write Mederich up for "not cooperating," and told Mederich that he was under arrest and to put his hands on the squad car. *Id*. at 3 ¶ 9. Mederich followed Chrabot's instruction. *Id*. Chrabot warned Mederich that the dash camera was recording their interaction. *Id*.

---

[1] Bracketed numbers refer to entries on the district court docket.

Mederich's friends told Chrabot that "Black lives matter" and that Chrabot would not be treating Mederich the way Chrabot was if Mederich and his friends were "straight white guys."[2] *Id.* at 3–4 ¶¶ 9–10. Chrabot demanded: "What did you say to me?" *Id.* at 3 ¶ 10. Then, without cause or provocation, Chrabot twisted Mederich around and threw him to the ground, fracturing Mederich's right arm. *Id.* at 7 ¶ 13. Before being transported to the police station, Mederich's arm was placed in a cast at Norwegian American Hospital. *Id.* at 7 ¶ 14.

Sergeant Joseph Giambrone investigated Mederich's arrest and concluded that Officer Chrabot used an appropriate amount of force. *Id.* at 4 ¶ 11. Despite the fact that at least five cameras may have captured or did capture Mederich's arrest, Giambrone did not consider any video or audio footage in reaching his conclusion. *Id.* At the time of the arrest, there were three squad cars with dash cameras, *id.* at 16 ¶ 1, and there were surveillance cameras owned by Rite Liquors and the Chicago Athletic Club in or near the alley, *id.* at 4 ¶ 11. The police department maintains Watch Incident Logs to report malfunctioning dash cameras; none of the dash cameras that were at the scene of Mederich's arrest appeared in the relevant logs before Mederich's arrest, thereby suggesting that all of those dash cameras were properly functioning.[3] *Id.* at 16 ¶¶ 2–3. Nevertheless, the City reported that the

---

[2] Mederich's and his friends' sexual orientation is homosexual. [36] at 2 ¶ 5.

[3] Coban Technologies contracted with the City of Chicago to "provide software, parts, repair services and/or part and service upgrades including software" to all dash cameras in the City of Chicago's squad cars from December 3, 2014 through December 2019. [36] at 16 ¶ 4. Under the contract, Coban had fourteen days to fix a broken dash camera "after receiving a proper City authorized purchase order." *Id.* at 16 ¶ 5. The complaint pleads in the alternative: either the City negligently failed to authorize a purchase order to repair the

3

dash camera in Chrabot's vehicle had had drained batteries for twenty-nine days before Mederich's arrest, *id.* at 16 ¶ 2, and the individual log for a second police car indicated that its dash camera "was abruptly shut down" during Mederich's arrest,[4] *id.* at 18 ¶ 1. The complaint does not make any specific allegations about the third police car's dash camera or whether it captured Mederich's arrest.

With respect to the surveillance videos, the complaint says that Rite Liquors had video of the incident for at least seven days and that the Chicago Athletic Club had video of the incident for at least ten days. *Id.* at 11 ¶ 13. But, the owner of Rite Liquors, Mike Liacopoulos, allegedly conspired with the Chicago Police Department to "destroy or allow to be destroyed" the video surveillance evidence. *Id.* at 11 ¶ 13. Similarly, the management from the Chicago Athletic Club "either destroyed or failed to save video footage of the incident." *Id.* The complaint does not name the Chicago Athletic Club or its agents as defendants.

Despite Officers Chrabot's and Cochran's claim that Mederich grabbed Chrabot's left wrist during the altercation, which Mederich denies, neither officer nor Detective Van Beveren contacted the Cook County State's Attorney's felony review unit to seek felony charges for aggravated battery against Mederich. *Id.* at 11–12 ¶ 14. Mederich believes they only charged him with misdemeanors,[5] because they knew that a felony review request would result in the Assistant State's

---

three squad cars' dash cameras, or the City did authorize a purchase order, but Coban Technologies breached its duty to fix the dash cameras in fourteen days. *Id.*

[4] The complaint also states that for twenty-three days before Mederich's arrest, Coban Technologies had "failed to replace the batteries" in that second car. [36] at 17 ¶ 7.

[5] The officers charged Mederich with battery and resisting arrest; Mederich denies committing these crimes. [36] at 12 ¶ 14.

4

Attorney insisting on viewing video evidence from the dash and surveillance cameras as well as interviewing the parties involved; all of which would have corroborated Mederich's version of the events and not the officers'. *Id.* at 12 ¶ 14, 13 ¶ 16.

The complaint also says that Giambrone did not document any medical treatment of Chrabot's claimed injury, *id.* at 13 ¶ 15, nor did he interview Mederich's friends or any other potential witnesses, *id.* at 4 ¶ 11. Although he approved the resisting arrest charge, Giambrone did not document any verbal commands Chrabot gave that Mederich failed to follow, nor did he review any evidence that Mederich "fled" or "pulled away." *Id.* at 13 ¶ 15. Mederich accuses Giambrone of "maliciously and willfully" framing him, when Giambrone "knew or should have known" that the video evidence contradicted the officers' story about him grabbing Chrabot's wrist. *Id.* at 12 ¶ 15. Mederich believes Giambrone failed to fully investigate the incident as required under Chicago Police Department Rules and instead adhered to the Chicago Police Department's "code of silence." *Id.* at 12 ¶ 15.

Mederich alleges that the individual defendants acted together in a conspiracy to deter Mederich from bringing an action, and that they did so by bringing false criminal charges of battery and resisting arrest against him, and by destroying the video and audio evidence of his arrest. *Id.* at 10 ¶ 12.

5

### III. Analysis

#### A. Coban Technologies' Motion to Dismiss

Mederich brings a claim for negligent repair of the dash cameras against Coban Technologies and the City of Chicago, but the complaint places liability on one or the other, not on both: "The City negligently failed to issue a purchase order to repair the dash cams [. . .] until after the Plaintiff was injured. Alternatively, the City did issue a purchase order to repair the dash cameras [. . .] but Coban Technologies, Inc. failed in its duty to fix the dash cams in 14 days." [36] at 16–17 ¶ 5. Mederich says that Coban and the City had a duty to provide timely repair services to the dash cameras and that they breached this duty by failing to replace the batteries in two dash cameras involved in his arrest and injury. *Id.* 17 ¶ 7. As a result of the negligent failure to replace the dash cameras' batteries, Mederich says that he was "forced to defend himself from baseless criminal charges," and that his ability to recover damages from Chrabot's intentional and malicious use of excessive force was harmed. *Id.* 17 ¶ 9. Coban moves to dismiss this count arguing that Mederich has not pled facts to demonstrate that Coban owes him a duty or that Coban's alleged breach was the proximate cause of Mederich's alleged injuries. *See* [48] at 4.

To state a cause of action for negligence, Mederich must show that Coban owed a duty to him, that Coban breached that duty, and that Mederich incurred injuries proximately caused by the breach. *First Springfield Bank & Trust v. Galman*, 188 Ill.2d 252, 256 (1999). Breach and proximate cause are questions of fact for the jury, but the existence of a duty is a question of law for the court. *Adams*

*v. N. Illinois Gas Co.*, 211 Ill.2d 32, 43–44 (2004). To determine if a duty exists, courts consider whether the relationship between the plaintiff and defendant is one where the law imposes an obligation of reasonable conduct on the defendant, for the benefit of the plaintiff. *Marshall v. Burger King Corp.*, 222 Ill.2d 422, 436 (2006). This inquiry involves four factors: (1) the reasonable foreseeability of the injury; (2) the likelihood of the injury; (3) the magnitude of the burden of guarding against the injury; and (4) the consequences of placing the burden on the defendant. *Vancura v. Katris*, 238 Ill.2d 352, 383 (2010).

Mederich points to Coban's contract with the City, wherein Coban committed to repair and provide parts for dash cameras within fourteen days of receiving a formal request from the City. Since Chrabot's vehicle had had drained batteries for twenty-nine days and the other vehicle had had drained batteries for twenty-three days before Mederich's arrest, Mederich argues that Coban breached its duty to timely repair the cameras. Negligent performance of a contractual duty may create tort liability to a plaintiff who is not party to the contract. *Rozny v. Marnul*, 43 Ill.2d 54, 62–63 (1969). But that possibility does not mean that there is always a duty to that plaintiff. The nature of the relationship is context-dependent. Mederich argues that the likelihood of police violence resulting in injury is high in Chicago and that it is widely known that evidence from dash cameras is crucial in litigation involving Chicago police officers; thus, it was reasonably foreseeable that Mederich or another individual would be injured by the negligent failure to replace batteries

in the squad cars' dash cameras. The complaint does not support such an expansive notion of tort duty between city contractors and the public at large.

The complaint raises more questions than it answers. Did the City submit a formal request to have Coban repair the dash cameras in the squad cars? Is a battery a "part" and or is replacing a battery a "repair" under the contract? Did Coban fail to act within fourteen days of receiving a formal request from the City? Did the fourteen days elapse on or before the date of Mederich's arrest? The complaint does not adequately allege that Coban breached its contract with the City. But, even if Coban's contractual duty to the City had been triggered, the complaint does not demonstrate why Coban's duty would extend to cover Mederich, nor does it show how Coban would owe Mederich an independent duty.

Cameras may deter or document instances of police misconduct, but a contract to repair those cameras does not impose a tort duty on the repair company to protect people from the risks of police misconduct. It is not reasonably foreseeable to such a contractor that its negligent act would result in false criminal charges against an individual or the inability of that individual to recover damages. Similarly, Mederich's alleged injury was not foreseeable to Coban; the two are not in a relationship where Coban faces obligations for Mederich's benefit. Moreover, even if Coban owed Mederich a duty to replace the batteries in the City's dash cameras, the complaint does not demonstrate why Coban's breach of that duty would be a proximate cause of the harm Mederich alleges. Mederich could have been subjected to baseless criminal charges or been unable to recover damages even if Coban had

replaced the batteries in the dash cameras. In fact, the allegations of the complaint suggest that Chrabot believed the dash cameras were working and he nevertheless engaged in the alleged misconduct; Giambrone did not rely on any video footage (or its absence) when making a charging decision. Coban's conduct is not alleged to have caused the false criminal charges or excessive force against Mederich. As such, Coban is not liable in tort for Mederich's alleged injuries; Coban's motion to dismiss is granted.

B. **The City of Chicago's Motion to Dismiss**

Mederich brings Count VII for negligent repair of the dash cameras and Count VIII for negligent spoliation against the City of Chicago. As stated above, Mederich's allegations in Count VII are in the alternative, either Coban technologies breached its duty to timely repair the dash cameras or the City negligently failed to issue a proper request to have Coban make the necessary repairs. With respect to Count VIII, Mederich alleges that the City is liable for the failure of Officers Eric Gomez and Edward Gomez to preserve evidence from their dash camera, which abruptly shut down during Mederich's arrest. Specifically, Mederich says "[t]he City of Chicago and their agents Officer Gomez and Officer Gomez breached their duty when they carelessly, negligently or intentionally by way of acts or omissions destroyed the video and audio tapes of the activities occurring." [36] at 18 ¶ 4. As a proximate cause of this breach, Mederich says he has been injured in his ability to prosecute and enforce his legal rights. *Id.* at 19 ¶ 8.

The City moves to dismiss Counts VII and VIII on the basis that both claims sound in negligence and are barred by the Local Governmental and Governmental

Employees Tort Immunity Act.[6] *See* 745 ILCS 10/1-101 *et seq*. This act typically shields government employees from liability for injuries resulting from their acts or omissions in exercising discretion in a determination of policy or in executing or enforcing the law (unless, in the latter situation, their actions constitute willful or wanton conduct). 745 ILCS 10/2-201, 2-202; *Ries v. City of Chicago*, 242 Ill.2d 205, 221–27 (2011). Whenever a government employee cannot be held liable for his actions, neither can his employer. 745 ILCS 10/2-109. In this way, the Act also protects local governments. But, the Act operates as an affirmative defense. *Michigan Ave. Nat. Bank v. Cty. of Cook*, 191 Ill.2d 493, 503 (2000). Since a complaint is not required to anticipate and overcome affirmative defenses, the question is whether the complaint contains sufficient facts to establish an affirmative defense or allegations that establish plaintiff is not entitled to relief as a matter of law, in which case the affirmative defense is a proper basis for dismissing the complaint. *O'Gorman v. City of Chicago*, 777 F.3d 885, 889 (7th Cir. 2015).

Section 2-201 provides that if a public employee serves in a position involving the determination of policy *or* the exercise of discretion, that employee is not liable unless that injury resulted from the employee's act or omission in determining policy *and* in exercising discretion. *Harinek v. 161 N. Clark St. Ltd. P'ship*, 181 Ill.2d 335, 341 (1998) (citing 745 ILCS 10/2-201). A "policy decision" is one that

---

[6] Defendants also move to dismiss Count VIII on the basis that intentional spoliation is not recognized as a tort claim in Illinois. [52] at 4; *see also Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 509–10 (7th Cir. 2007) (citing *Boyd v. Travelers Ins. Co.*, 166 Ill.2d 188, 192–193 (1995)). Mederich acknowledges that intentional spoliation has not been recognized by Illinois courts and clarifies that his claim is based on negligence. [71] at 10.

requires a balancing of competing interest and making a judgment call. *Id.* at 342. "[D]iscretionary acts are those which are unique to a particular public office," which stand in contrast with ministerial acts where "a person performs on a given state of facts in a prescribed manner, in obedience to the mandate of legal authority, and without reference to the official's discretion as to the propriety of the act." *Snyder v. Curran Twp.*, 167 Ill.2d 466, 474 (1995). Section 2-202 provides that "A public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct. 745 ILCS 10/2-202. "Willful and wanton conduct" consists of "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." 745 ILCS 10/1-210.

The complaint does not contain the necessary allegations to support the City's affirmative defense that the defendants are immune from tort liability for negligent repair of the dash cameras. The contract between Coban and the City referenced a formal request the City could submit to trigger Coban's duty to repair the cameras within fourteen days. It is unclear from the complaint who makes the decision to submit that request, whether that person is in a policy-making or discretion-exercising position, or whether the decision to not submit the request (assuming that an agent of the City made such a decision) involved a policy determination or an exercise of discretion. Similarly, the complaint does not establish that an agent of the City was executing or enforcing the law when he

11

failed to submit a repair request to Coban; nor does the complaint suggest that the agent's failure to do so was not willful or wanton conduct. Without these elements, the City cannot show, at this stage of the litigation, that it is immune from liability for Count VII under § 10/2-201 or § 10/2-202 of the act.

Regarding Count VIII, the facts in the complaint do not show that Officers Eric Gomez and Edward Gomez held a position that involves the determination of policy or the exercise of discretion. Even if it did, the complaint does not include facts that demonstrate that these officers made a policy decision or exercised discretion in negligently failing to preserve evidence from their dash camera. Quite the opposite, the complaint states that the dash camera was abruptly shut down during Mederich's arrest, which seems to imply either a technological malfunction or foul play by the officer(s).

The City argues that the officers made a policy decision about the dash cameras: they balanced "the various interests of protecting the community" with "waiting until monetary resources were available to fix the camera." [78] at 4. Such facts are not alleged in the complaint, and ensuring that dash cameras are operable and that their footage is preserved could be a ministerial act mandated by Illinois law. *See* 20 ILCS 2610/30. All police squad vehicles are required to have dash cameras, *id.* § 30(b), and recordings must be stored for at least ninety days, *id.* § 30(f). "Under no circumstances shall any recording [. . .] be altered or erased prior to the expiration of the designated storage period."[7] *Id.* Additionally, the City of

---

[7] "Upon completion of the storage period, the recording medium may be erased and reissued for operational use unless otherwise ordered by the District Commander or his or her

12

Chicago Police Department is responsible for maintaining operable dash cameras; the law provides that "[a]n officer operating a patrol vehicle must immediately document and notify the District Commander or his or her designee of any technical difficulties, failures, or problems with the in-car video camera recording equipment or recording medium." *Id.* § 30(h). Thereafter, the District Commander or his or her designee must make "every reasonable effort" to repair the dash camera and to "determine if it is in the public interest to permit the use of the patrol vehicle." *Id.*

The complaint alleges that none of the dash cameras that were present for Mederich's arrest had been reported as faulty or inoperable; and since officers are required to report issues with their dash cameras, it would be reasonable to infer that those dash cameras were properly functioning. Relatedly, the allegation that one dash camera was abruptly shut down during Mederich's arrest suggests that a previously unreported issue with the camera arose or that the officer(s) intentionally interfered with the camera's functioning. The complaint does not allege any facts to support the City's argument that interests were balanced or that a policy decision was made about the relevant dash cameras. Similarly, the complaint does not contain allegations that the officers were executing or enforcing a law related to the camera when it abruptly shut down. If anything, the complaint alleges willful and wanton conduct by the officers in their failure to report issues or in their tampering with the dash camera. It does not contain allegations about a policy determination such that immunity under 2-201 would apply. Thus, an

---

designee or by a court, or if designated for evidentiary or training purposes." *See* 20 ILCS 2610/30(f).

affirmative defense based on the Tort Immunity Act is not available for the City at this stage of the litigation. The City's motion to dismiss Counts VII and VIII is denied.[8] Defendants may assert an immunity defense after some factual development.

C. **Individual Officers' Motion to Dismiss**

Mederich brings the following counts against the individual officers: Count II invoking 42 U.S.C. § 1981, Count III for battery, and Count V for conspiracy.[9] The individual officers move to dismiss these counts on the basis that they are barred by *Heck v. Humphrey*, and that plaintiff is collaterally estopped from pursuing them. *See* [54] at 2 (citing 512 U.S. 477 (1994)). The *Heck* doctrine provides that "a person who has been convicted of a crime cannot seek damages or other relief under federal law (as in a suit under 42 U.S.C. § 1983 or *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971)) for violation of his rights by officers who participated in the investigation or prosecution of the criminal charge, if 'a judgment in favor of the plaintiff [in the civil suit] would necessarily imply the invalidity of his conviction or sentence.'" *Hill v. Murphy*, 785 F.3d 242, 244 (7th Cir. 2015) (quoting *Heck*, 512 U.S. at 487). The purpose of the *Heck* doctrine is to prevent a collateral attack on a conviction

---

[8] For the same reasons, the individual officers' motion to dismiss Count VIII for negligent spoliation, [54], is denied.

[9] Section 1981 does not create a private right of action against state actors. *Campbell v. Forest Pres. Dist. of Cook Cty., Ill.*, 752 F.3d 665, 671 (7th Cir. 2014). It is unclear what theory of liability Mederich invokes in his Count II (it is not a racial discrimination claim, the typical claim under § 1981), but in any event and for present purposes, it is either duplicative of Count I or is a § 1983 claim challenging aspects of Mederich's prosecution.

14

through a civil suit. *VanGilder v. Baker*, 435 F.3d 689, 691 (7th Cir. 2006) (citing *Heck*, 512 U.S. at 484). *Heck* also promotes the "strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transaction." 512 U.S. at 484. This same judicial policy led to the application of *Heck* to state-law claims. *Lieberman v. Liberty Healthcare Corp.*, 408 Ill.App.3d 1102, 1112 (2011); *see also Northfield Ins. Co. v. City of Waukegan*, 701 F.3d 1124, 1137 (7th Cir. 2012) (Hamilton, J., concurring); *Smith v. Burge*, 222 F.Supp.3d 669, 693 (N.D. Ill. 2016); *Starks v. City of Waukegan*, 946 F.Supp.2d 780, 803 (N.D. Ill. 2013), *on reconsideration in part* (Aug. 16, 2013).

In the underlying criminal case, the judge found Mederich guilty as to all three counts against him: (1) battery in violation of 720 ILCS 5/12-3(a)(2); (2) drinking alcohol on the public way in violation of MCC § 8-4-030; and (3) resisting or obstructing a peace officer in violation of 720 ILCS 5/31-1(a). *See* [54-1]; [54-2].[10] The judge sentenced Mederich to supervision. Although Mederich acknowledges that he was drinking alcohol in the alley before his arrest, he otherwise maintains his innocence and insists that criminal charges were falsely brought against him. But, he argues that his claims cannot be barred by *Heck* because supervision, which

---

[10] The individual officers produce and rely on the Certified Disposition and the trial transcript from Mederich's criminal case—documents that Mederich did not attach to the complaint. *See* [54-1], [54-2]. I take judicial notice of these public records in deciding the motion to dismiss. *See Wright v. Associated Ins. Companies Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994) ("[D]ocuments attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim. Such documents may be considered by a district court in ruling on the motion to dismiss."). In the complaint, Mederich acknowledges (but contests the validity of) his misdemeanor charges of battery and resisting arrest; and the complaint references his related "criminal case." *See* [36] at 11–12 ¶ 14. These public records are central to the claims in the complaint.

he received, is not a criminal conviction or a final disposition in Illinois. *See Kirwan v. Welch*, 133 Ill.2d 163, 167 (1989); 730 ILCS 5/5-6-3.1.

Neither the Seventh Circuit nor the Illinois Supreme Court has decided whether a disposition of supervision in Illinois constitutes a conviction or sentence for purposes of *Heck*. Drawing on the broader principles of the *Heck* doctrine, however, I conclude that it does apply to a disposition of supervision. An adjudication of Mederich's guilt preceded his disposition of supervision—the judge found that Mederich committed battery and resisted arrest. *See United States v. Jones*, 448 F.3d 958, 961 (7th Cir. 2006) (a disposition of supervision is in fact preceded by an adjudication of guilt). Mederich stands guilty of battery and resisting arrest and so the *Heck* doctrine bars any civil action by him against the officers involved in his investigation where a judgment in his favor would, in effect, question the validity of his prior convictions. There should be only one resolution of the facts underlying Mederich's convictions—and that occurred in his criminal case.

Mederich argues that even if the *Heck* doctrine applies, his claims do not "necessarily" invalidate his criminal convictions. I disagree. Mederich was convicted of misdemeanor battery and resisting arrest. For the former offense, the judge found that Mederich "knowingly without legal justification by any means [. . .] ma[de] physical contact of an insulting or provoking nature with an individual." 720 ILCS 5/12-3(a)(2). For the latter offense, the judge found that Mederich "knowingly resist[ed] or obstruct[ed] the performance by one known to the person to be a peace officer [. . .] of any authorized act within his or her official capacity." 720 ILCS 5/31-

1(a). Yet, according to the complaint, Mederich put his hands on the hood of the squad car, as he was instructed, and Chrabot threw him to the ground without provocation. *See, e.g.*, [37] at 3 ¶ 9; 7 ¶ 13. These and other allegations about how the police conspired to hide evidence of Chrabot's battery of Mederich are the basis for Mederich's § 1981, battery, and conspiracy claims. Given that these allegations directly contradict the findings of fact in the criminal case, which led to Mederich's convictions, they are barred by *Heck*.[11] The individual officers' motion to dismiss as to these issues is granted. Counts II, III, and V[12] are dismissed without prejudice. *Polzin v. Gage*, 636 F.3d 834, 839 (7th Cir. 2011) (dismissals based on the *Heck* doctrine are without prejudice).[13]

### D. Liacopoulos's Motion to Dismiss

Mederich brings Count V against Liacopoulos for conspiring to interfere with his civil rights, in violation of 42 U.S.C. § 1985(2). The statute makes it unlawful for two or more persons to conspire for the purpose of "impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or

---

[11] I deny Mederich's request to stay the proceedings in their entirety until his supervision has been terminated and his charges dismissed. *See* [70] at 4. The excessive force claim is a live controversy that should proceed to adjudication and is not dependent on plaintiff's other claims.

[12] Even if *Heck* did not bar Mederich's conspiracy claim, only public employees remain as defendants, so a conspiracy claim under § 1983 would have "no role to play.*" Scott v. City of Chicago*, 619 Fed. App'x 548, 548 (7th Cir. 2015) (citing *Fairley v. Andrews*, 578 F.3d 518, 526 (7th Cir. 2009)).

[13] I do not reach defendants' arguments for collateral estoppel because I find that *Heck* applies. In the event Mederich amends his complaint, however, I note that his criminal trial (based on the current record) litigated the question of whether he committed battery or resisted arrest. It did not necessarily decide whether police officers reached an agreement to destroy evidence, nor did it necessarily decide whether Chrabot committed a battery against Mederich.

17

Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him [. . .] for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws." *Id*. The complaint compares this case to certain facts surrounding the fatal shooting of Laquan McDonald. After that shooting, officers went to a nearby Burger King restaurant and requested to view the surveillance footage. [36] at 11 ¶ 13. Burger King employees granted the officers access to the surveillance footage because they "were just trying to help the police officers." *Id*. The next day, when the Independent Police Review Authority went to Burger King to review the surveillance footage, they learned that the footage had been deleted. *Id*. The complaint alleges that like the Burger King employees, Liacopoulos conspired to destroy or allow the police to destroy evidence. *Id*.

Liacopoulos moves to dismiss the complaint, arguing that it consists of conclusory allegations that fail to state a § 1985 conspiracy claim against him. *See* [56]. To survive the motion to dismiss, the complaint must allege that the conspirators: (1) agreed to inflict injury upon him, (2) acted with a single plan, and (3) knew the general nature and scope of the plan. *Green v. Benden*, 281 F.3d 661, 665 (7th Cir. 2002). "Agreement may be inferred from circumstantial evidence, but only if it is sufficient to permit a reasonable jury to conclude that a meeting of the minds had occurred and that the parties had an understanding to achieve the conspiracy's objectives." *Id*. at 665–66.

The complaint does not allege any meeting of the minds between Liacopoulos and the officers to violate Mederich's constitutional rights. The complaint states that Rite Liquors retained the surveillance footage for seven days after Mederich's arrest. It is not alleged that officers went to Rite Liquors to view the surveillance footage and if so, whether the footage had been deleted after the officers viewed it, or whether Rite Liquors merely taped over the footage after storing it for one week. In fact, the complaint undermines Mederich's argument that Liacopoulos intended to inflict injury upon him by comparing Liacopoulos to the Burger King employees in McDonald's case—the comparison leads to an inference that Liacopoulos, too, allowed officers to access the footage simply out of a desire to comply with the officers' request, rather than any wish to harm Mederich. Without an allegation about a meeting of the minds, Mederich's conspiracy claim against Liacopoulos fails.[14] Liacopoulos's motion to dismiss is granted.

Mederich has amended his complaint once in response to motions to dismiss, but the case remains at an early stage. Where I dismissed counts, the dismissal is without prejudice. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana*, 786 F.3d 510, 518 (7th Cir. 2015).

---

[14] A § 1985(2) conspiracy to obstruct access to state courts must be motivated by invidious, class-based animus. *Lowe v. Letsinger*, 772 F.2d 308, 311 (7th Cir. 1985); *Wright v. Illinois Dep't of Children & Family Servs.*, 40 F.3d 1492, 1507 (7th Cir. 1994) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)). The complaint contains some allegations related to Mederich's sexual orientation, and there was reference to the Black Lives Matter movement during the arrest, but the complaint does not allege class-based animus as motivation for the conspiracy by all involved officers and Liacopoulos to influence the state-court prosecution. Although this argument was not raised by the defendants, I note that Count V is deficient for this reason too.

## IV. Conclusion

Coban's motion to dismiss, [48], is granted; Count VII is dismissed without prejudice as to Coban. The City's motion to dismiss, [52], is denied; Counts VII and VIII are not dismissed with respect to the City. The individual officers' motion to dismiss, [54], is granted in part and denied in part; Counts II, III, and V are dismissed without prejudice as to the individual officers, but Count VIII is not dismissed with respect to the individual officers. Liacopoulos's motion to dismiss, [56], is granted; Count V is dismissed without prejudice as to Liacopoulos.

ENTER:

_____
Manish S. Shah
United States District Judge

Date: July 6, 2017